**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**STEPHON HARRIS,**

                              **Plaintiff,**

vs.                                          **1:13-CV-893
(MAD/CFH)**

**NEW YORK STATE DEPARTMENT
OF TAXATION,** *et al.***,**

                              **Defendants.**

_____

**APPEARANCES:**                                **OF COUNSEL:**

**STEPHON HARRIS**
9 Division Street
Glens Falls, New York 12801
Plaintiff *pro se*

**OFFICE OF THE NEW YORK**           **KEVIN M. HAYDEN, AAG**
**STATE ATTORNEY GENERAL**
Syracuse Regional Office
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2465
Attorneys for Defendants

**Mae A. D'Agostino, U.S. District Judge:**

### MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On July 30, 2013, Plaintiff *pro se* commenced this action pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA") and Title VII of the Civil Rights Act of 1991. *See* Dkt. No. 1.

On August 29, 2014, the Court dismissed Plaintiff's Complaint without prejudice due to failure to comply with Rules 8 and 10(b) of the Federal Rules of Civil Procedure. *See* Dkt. No. 21. On September 10, 2014, Plaintiff filed an Amended Complaint, claiming that Defendants

have violated the ADA, Title VII, the Family and Medical Leave Act ("FMLA"), and that Defendants have breached Plaintiff's contractual rights under the Civil Service Employees Association ("CSEA") Contractual Agreement. *See* Dkt. No. 22.

Currently before the Court is Defendants' November 18, 2014 motion to dismiss Plaintiff's Amended Complaint for failure to state a claim and for lack of subject matter jurisdiction. *See* Dkt. No. 33. On December 1, 2014, Plaintiff filed a response in opposition to Defendants' motion. *See* Dkt. No. 36.

## II. BACKGROUND[1]

During the time in question, Plaintiff worked for the New York State Department of Taxation. Dkt. No. 25 at 1. His Complaint alleges a number of incidents that span his entire course of employment, which began in the year 2000. Dkt. No. 33-7 at 1.[2]

During Plaintiff's first week at work in the year 2000, Defendant Padula assigned Plaintiff "to watch plumbers install a pipe in a secure area of IT receiving." *Id.* at 1. After the plumbers completed their work, Defendant Padula "directed the basement staff to do a physical inventory to see if anything was missing[,]" and Plaintiff "believe[s] they were trying to see if [he] would steal something." *Id.* Additionally, watching plumbers was not part of Plaintiff's job description, and therefore he was forced to perform "out of title work." *Id.*

---

[1] Unless otherwise noted, all facts are taken from Plaintiff's Amended Complaint, and are accepted as true for the purposes of this motion to dismiss. *See* Dkt. No. 25.

[2] The Court incorporates by reference Plaintiff's original Equal Opportunity Employment Commission ("EEOC") complaint (Dkt. No. 33-7 at 1), because Plaintiff included the "Dismissal and Notice of Rights" letter in his initial Complaint (Dkt. No. 1 at 6). *See Blue Tree Hotels Inv., Ltd. v. Starwood Hotels & Resorts Worldwide, Inc.*, 369 F.3d 212, 217 (2d Cir. 2004) ("Our review is generally limited to the facts and allegations that are contained in the complaint and in any documents that are either incorporated into the complaint by reference or attached to the complaint as exhibits").

Defendant Padula also threatened to "write[] up" Plaintiff for a number of mistakes for which Plaintiff denies responsibility, and Plaintiff believes these events demonstrate that he was subjected to a hostile work environment. *Id.* First, Plaintiff was threatened with disciplinary action for failing to move an employee's seat, but "the manager discard[ed] the current seating sheet and went by an outdated one which had errors[,]" which "made it seem that [Plaintiff] did not perform [his] duty." *Id.* Second, an employee by the name of "Cheryl Roisterer" improperly took a computer that Plaintiff had set up and "used [it] for an executive." *Id.* As Plaintiff was now missing a computer he was supposed to have set up, he was threatened for the infraction, but he "heard no mention of [Roisterer] being written up for her action." *Id.* Third, Defendant Padula protected, defended, and explained away Defendant Spring's actions, but it is not apparent what actions Plaintiff is referring to. *Id.* Finally, while out to lunch with Plaintiff, Defendant Padula "told [Plaintiff] not to let anyone at Tax call [him] a mulignan (a racially offensive term for a black person)." *Id.* Plaintiff "found that offensive in itself." *Id.*

Plaintiff also believes that Defendant Spring subjected him to a hostile work environment, and sets out a number of events in support of his position. *Id.* at 2. First, Defendant Spring "asked [Plaintiff] to give him a ride[,]" and when Plaintiff "charged the [half-]hour of time[,] . . . [Defendant] Spring became very mad and ask[ed Plaintiff] why [he] charged the time." *Id.* Plaintiff believes that this incident was the catalyst for Defendant Spring's harassing behavior. *Id.* Second, at the end of Plaintiff's work day, Defendant Spring followed Plaintiff to his car and told him that he "was making [Defendant Spring] look bad because of [Plaintiff's] use of sick leave." *Id.* Further Defendant Spring said "[t]hat the only reason [Plaintiff] has a job is so [Defendant Spring] does not have to work." *Id.* Third, Defendant Spring tasked Plaintiff with finding a laptop, and "kep[t] coming to harass [Plaintiff] about finding it for four days [during] which

[Plaintiff] spent 12-24 hours looking [for it]." *Id.* Defendant Spring relieved Plaintiff from the search only after Plaintiff asked a third party to tell Defendant Spring the laptop was "involved in a [c]riminal case." *Id.* Finally, Defendant Spring "started in on [Plaintiff] about [his] use of sick time." *Id.* Presumably based on these events, Plaintiff claims that Defendant Spring violated 29 C.F.R. § 825.220(c) and Article 25 of the CSEA State-Union Contract Agreement, which prohibits discrimination. *Id.*

Plaintiff also believes that Defendant Pentak subjected him to a hostile work environment. *Id.* at 3. First, Plaintiff claims that Defendant Pentak harassed him when "she started to quiz [him] on [his] job duties." *Id.* Second, Plaintiff alleges that Defendant Pentak has "looked at [him] with contempt" at all times after Plaintiff looked for the laptop involved in a criminal investigation, which is when he "crossed paths" with Defendant Pentak. *Id.* Third, Defendant Pentak "wrote [Plaintiff] up [for] forgetting to add in a phone number to a secondary phone field." *Id.* Plaintiff believes that he was written up due to his race, because other employees have done the same thing with no negative consequences. *Id.* Fourth, Defendant Pentak held Plaintiff responsible for "equipment that was in [his] name but not at [his] location[,]" which was unfair because "the equipment could have been gone a year or so." *Id.* Fifth, Plaintiff was not granted a cubicle re-assignment which he requested due to "a loud employee . . . that . . . was beginning to harass [him]." *Id.* Based on these events, Plaintiff claims that Defendant Pentak violated 29 C.F.R. §§ 825.220(c) and 825.114, the latter of which provides coverage under the FMLA for inpatient care, meaning "an overnight stay in a hospital, hospice, or residential medical care facility." *Id.*; 29 C.F.R. § 825.114. Plaintiff also claims that Defendant Pentak violated Article 25 of the CSEA Contract Agreement. *Id.*

Finally, Plaintiff alleges that Defendant New York State ("NYS") Department of Taxation violated 29 C.F.R. §§ 825.220(c) and 825.114 of the FLMA, the ADA for "[t]raining[,]" and that they violated Article 25 of the CSEA Contract Agreement. *Id.*

### III. DISCUSSION

**A.      Standard of Review**

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted). This presumption of truth, however, does not extend to legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570. "The plausibility standard is not akin to a 'probability

5

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Id.* (quoting [*Twombly*, 550 U.S.] at 557, 127 S. Ct. 1955). Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[] complaint must be dismissed[,]" *id.* at 570.

Despite this recent tightening of the standard for pleading a claim, complaints by *pro se* parties continue to be accorded more deference than those filed by attorneys. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation omitted). As such, *Twombly* and *Iqbal* notwithstanding, this Court must continue to "'construe [a complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggests.'" *Weixel v. Bd. of Educ.*, 287 F.3d 138, 146 (2d Cir. 2002) (quotation omitted).

**B.  Individual liability under the ADA, Title VII, and the FMLA**

Defendants argue that they "cannot be sued in their individual or personal capacity under the ADA[,]" or under Title VII. Dkt. No. 33-1 at 16. Further, Defendants claim that the individual Defendants cannot be held liable under the FMLA unless "they had 'substantial control over the aspect of employment alleged to have been violated[.]'" *Id.* (citing *Clark v. Dominique*, 798 F. Supp. 2d 390, 406 (N.D.N.Y. 2011)).

According to the Second Circuit, "the remedial provisions of Title VII, including § 2000e-5, do not provide for individual liability. . . . Accordingly, it follows that, in the context of employment discrimination, the retaliation provision of the ADA, which explicitly borrows the remedies set forth in § 2000e-5, cannot provide for individual liability." *Spiegel v. Schulmann*,

6

604 F.3d 72, 79 (2d Cir. 2010) (internal citation omitted). Further, in regard to individual liability under the FMLA, an "individual public employee[] may be amenable to suit under the FMLA if they qualify as an employer . . . such that they had 'substantial control over the aspect of employment alleged to have been violated.'" *Clark*, 798 F. Supp. 2d at 406 (quoting *Johnson v. A.P. Prods., Ltd.*, 934 F. Supp. 625, 629 (S.D.N.Y. 1996)).

As the Second Circuit explained in *Spiegel*, there is no individual liability under Title VII and the ADA. Accordingly, the Court grants Defendants' motion and dismisses Plaintiff's ADA and Title VII claims against Defendants Padula, Spring, and Pentak.

Further, Plaintiff has not made "any particularized or individualized allegations" to plausibly suggest that any individual Defendants exercised substantial control over the aspect of employment alleged to have violated Plaintiff's FMLA rights. *Id.* While Plaintiff's Amended Complaint lists "FMLA violations" under his allegations against both Defendants Spring and Pentak, he has not alleged any specific violations of his FMLA rights. Dkt. No. 25 at 2-3. Moreover, he has not alleged sufficient facts to plausibly suggest that he is entitled to protection under the FMLA. Accordingly, the Court grants Defendants' motion to dismiss Plaintiff's FMLA claims against Defendants Padula, Spring, and Pentak.

Based on the foregoing, the Court grants Defendants' motion to dismiss regarding the Title VII, ADA, and FMLA claims against Defendants Padula, Spring, and Pentak.

**C.    Remaining claims against the NYS Department of Taxation**

*1. Title VII hostile work environment*

"To state a hostile work environment claim in violation of Title VII, a plaintiff must plead facts that would tend to show that the complained of conduct: (1) 'is objectively severe or pervasive, that is, . . . the conduct creates an environment that a reasonable person would find

7

hostile or abusive'; (2) creates an environment 'that the plaintiff subjectively perceives as hostile or abusive'; and (3) 'creates such an environment because of the plaintiff's [race],'" *Patane*, 508 F.3d at 113 (quoting *Gregory v. Daly*, 243 F.3d 687, 691-92 (2d Cir. 2001)), or because of any other characteristic protected by Title VII, s*ee Gregory*, 243 F.3d at 692 (indicating that any characteristic protected by Title VII is sufficient to satisfy the third element).

"In determining whether conduct constitutes a hostile work environment, the Court must consider the frequency and severity of the discriminatory conduct, whether the conduct is physically threatening or humiliating, and whether the conduct unreasonably interferes with the plaintiff's work performance." *Salmon v. Pliant*, 965 F. Supp. 2d 302, 305 (W.D.N.Y. 2013) (citations omitted). Further, "a few isolated incidents of 'boorish or offensive use of language' are generally insufficient to establish a hostile work environment." *Id.* (citations omitted).

Plaintiff's Amended Complaint claims that Defendant Padula told Plaintiff "not to let anyone at Tax call him a mulignan[,]" a racial slur. Dkt. No. 25 at 1. While Plaintiff claims that Defendant Padula acted in a discriminatory manner after Plaintiff observed the plumbers' work, he has not alleged any facts that suggest Defendant Padula required an inventory of items because of Plaintiff's race. *Id.* Plaintiff's conclusory allegations are clearly insufficient. Next, Plaintiff alleges that Defendant Pentak acted in a racially discriminatory manner towards him by writing him up for an offense that his co-workers were not written up for, although they made the same mistake. *Id.* at 3. Finally, Plaintiff alleges that Defendant Pentak harassed him by questioning him about his job duties, but does not allege that her questioning was motivated by racially discriminatory intent. Even construing Plaintiff's Amended Complaint broadly, the only two events that could be construed as racially discriminatory actions for the purposes of a hostile work

environment claim are Defendant Padula's alleged use of a racial slur, and Plaintiff's allegation that Defendant Pentak treated him differently from similarly situated individuals of other races.

The Court finds that these two events, accepted as true for the purposes of this motion, are not sufficient to support a Title VII hostile work environment claim, because they do not constitute "a steady barrage of opprobrious racial comments." *Chick v. County of Suffolk*, 546 Fed. Appx. 58, 59 (2d Cir. 2013) (internal quotation marks and citation omitted); *see also Salmon*, 965 F. Supp. 2d at 306 (finding that the use of a racial slur by a coworker combined with multiple other incidents of offensive conduct over a seven-year period was not sufficient to support a hostile work environment claim); *Nichols v. Michigan City Plant Planning Dept.*, 755 F.3d 594, 601 (7th Cir. 2014) (holding that, "while referring to colleagues with such disrespectful language is deplorable and has no place in the workforce, one utterance of [a racial slur] has not generally been held to be severe enough to rise to the level of establishing liability") (citation omitted).

Further, the Court finds that Plaintiff failed to exhaust his administrative remedies, which constitutes a separate grounds for dismissal. Plaintiff only indicated that he was subjected to discrimination based on his disability in the EEOC claims form. Dkt. No. 33-7 at 1. "Before filing a Title VII claim in federal court, a plaintiff must exhaust all available administrative remedies. An allegation not set forth in an administrative charge will be barred as unexhausted unless it is reasonably related to the allegations in the charge." *Hoffman v. Williamsville School Dist*, 442 Fed. Appx. 647, 649 (2d Cir. 2011) (internal and other citations omitted). An administrative charge is "reasonably related if [it] provided the EEOC with sufficient notice to investigate the allegation." *Id.* (citation omitted). As Plaintiff did not allege discrimination based on race in his EEOC complaint, and a disability discrimination charge does not provide any notice

9

that would prompt investigation of a charge based on race discrimination, Plaintiff failed to exhaust his administrative remedies.

Based on the foregoing, the Court grants Defendants' motion to dismiss regarding Plaintiff's Title VII hostile work environment claim.

### *2. FMLA Violation*

The FMLA gives eligible employees an "entitlement" to twelve workweeks per year of unpaid leave "[b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). While an employee is on FMLA leave it is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). At the end of a period of FMLA leave, the employee has the right to be restored to the position, or its equivalent, that he or she held prior to taking leave. 29 U.S.C. § 2614(a)(1)(A). However, this right is not absolute. "An employee has no greater right to reinstatement or to other benefits and conditions of employment than if the employee had been continuously employed during the FMLA leave period." 29 C.F.R. § 825.216(a).

The FMLA expressly creates a private cause of action for equitable relief and money damages against any employer who violates Section 2615. *See* 29 U.S.C. § 2617(a)(2); *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 724-25 (2003). The Second Circuit recognizes two claims under the FMLA: (i) interference with FMLA rights; and (ii) retaliation for exercising FMLA rights. *See Potenza v. City of New York*, 365 F.3d 165, 167-68 (2d Cir. 2004); *accord Voltaire v. Homes Servs. Sys., Inc.*, 823 F. Supp. 2d 77, 90 (E.D.N.Y. 2011) ("The Second Circuit recognizes a distinction between claims which allege a violation of § 2615(a)(1) – so called 'interference' claims – and claims which allege violations of § 2615(a)(2) and (b), which are

called 'retaliation' claims"); *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F. Supp. 2d 193, 198-99 & n.30 (S.D.N.Y. 2009) (citing cases).

Plaintiff appears to allege that Defendants retaliated against him for using FMLA leave time, but his Amended Complaint makes no mention of any actual leave time he took under the FMLA. *See* Dkt. No. 25. Further, it does not mention Defendants' retaliatory actions beyond vague statements that his leave time counted against the departments absentee policy for disciplinary purposes, that disciplinary actions were taken against him for using leave time, and that there was "a misunderstanding of what qualifies as a 'serious health [c]ondition.'" *Id.* at 3. Accordingly, the Court finds that Plaintiff has not plausibly alleged that he took FMLA leave from his job, or that he was subjected to retaliation for taking any such time off. Finally, the Court also finds that Plaintiff has failed to plausibly allege that he was, at any point, entitled to FMLA leave. Therefore, even interpreted as broadly as possible, Plaintiff's Amended Complaint has failed to plausibly state a claim for which relief can be granted.

Based on the foregoing, the Court grants Defendants' motion and dismisses Plaintiff's FMLA claims.

### *3. ADA Violation*

To state a *prima facie* claim under the ADA, a plaintiff must allege the following elements: "(1) that he is a 'qualified individual' with a disability; (2) that he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to his disability." *Hargrave v. Vermont*, 340 F.3d 27, 34-35 (2d Cir. 2003) (citation omitted); *see also Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (quotation omitted). "A 'qualified individual' is

> an individual with a disability who, with or without reasonable
> modifications to rules, policies, or practices, the removal of

> architectural, communication, or transportation barriers, or the
> provision of auxiliary aids and services, meets the essential
> eligibility requirements for the receipt of services or the
> participation in programs or activities provided by a public entity.

*Fulton*, 591 F.3d at 43 (citing 42 U.S.C. § 12131(2)). "A qualified individual can base a discrimination claim on any of 'three available theories: (1) intentional discrimination (disparate treatment); (2) disparate impact; and (3) failure to make a reasonable accommodation.'" *Id.* (quotation omitted).

Plaintiff's Amended Complaint, under the title "ADA violation," provides a single word, "Training." Dkt. No. 25 at 4. Plaintiff provides no further elaboration as to the basis for this claim. Earlier in the Amended Complaint, Plaintiff alleges that Defendant Spring told Plaintiff that he was "making him look bad because of my use of sick leave (remember I am disabled)." *Id.* at 2. These conclusory allegations, in which Plaintiff fails to identify exactly how he is disabled fail to plausibly allege that he is a qualified individual with a disability.

Plaintiff also alleges that he asked for his desk to be moved because of a loud employee "as a reasonable accommodation[,]" but his request was not granted. *Id.* at 3. Plaintiff does not indicate how this request was related to any alleged disability. Further, Plaintiff has not alleged any facts suggesting that he was excluded from services or denied similar benefits, and he has not shown that he has suffered discrimination of any sort due to a disability, whatever that disability may be. Accordingly, the Court finds that Plaintiff has failed to plausibly allege discrimination in violation of the ADA.

Based on the foregoing, the Court grants Defendants' motion and dismisses Plaintiff's Amended Complaint insofar as it relates to any ADA violations.

**D.     Leave to amend**

When a *pro se* complaint fails to state a cause of action, the court generally "should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (internal quotation and citations omitted). Of course, an opportunity to amend is not required where "[t]he problem with [the plaintiff's] cause of action is substantive" such that "better pleading will not cure it." *Id.* (citation omitted).

In the present matter, the Court finds that Plaintiff should not be permitted leave to file a second amended complaint. Both the original and amended complaint are completely devoid of any facts that would support any of Plaintiff's claims.

In response to the motion to dismiss, Plaintiff has indicated that he has Crohn's disease. Even taking this fact as true, Plaintiff has not alleged any facts plausibly suggesting that he was the subject of discrimination because of his alleged disability. Moreover, Plaintiff has identified only two incidents over an extended period of time that could reasonably be considered racially insensitive, and uttered by different individuals within the workplace. Such isolated incidents are absolutely insufficient to support his race discrimination claims.

Plaintiff also attached to his response to the pending motion a report by the Inspector General regarding an investigation into the actions of a former Department of Taxation acting commissioner. Dkt. No. 36 at 6-28. This report, which relates to a time prior to the alleged events in this action, has nothing to do with the present matter. Rather, the investigation dealt with "irregularity in the examination process which resulted in the hiring of the named attorneys to Senior Attorney positions." *Id.* at 8.

Having already provided Plaintiff with an opportunity to amend his complaint and in light of the utter lack of any factual allegations in support of his claims in the original complaint,

amended complaint, or in response to the motions to dismiss, the Court finds that Plaintiff should not be granted leave to file a second amended complaint. *See Abascal v. Hilton*, No. 04–CV–1401, 2008 WL 268366, *8 (N.D.N.Y. Jan. 13, 2008) ("Of course, granting a *pro se* plaintiff an opportunity to amend is not required where the plaintiff has already been given a chance to amend his pleading"), *aff'd*, 357 Fed. Appx. 388 (2d Cir. 2009); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (explaining that the denial of leave to amend is not an abuse of discretion where the movant has repeatedly failed to cure deficiencies in pleading); *Coleman v. brokersXpress*, LLC, 375 Fed. Appx. 136, 137 (2d Cir. 2010) ("Nor can we conclude that the district court abused its discretion in denying Coleman leave to amend. The district court afforded Coleman one opportunity to amend the complaint, and Coleman made no specific showing as to how he would cure the defects that persisted if given a second opportunity to amend").

Based on the foregoing, the Court dismisses Plaintiff's claims with prejudice.

**E.     Plaintiff's breach of contract claim**

In his amended complaint, Plaintiff alleges in a conclusory fashion that Defendants violated his rights under Article 25 of the CSEA Contract Agreement.

Application of supplemental jurisdiction is discretionary, and "it requires a balancing of the considerations of comity, fairness to the litigants, judicial economy, and the avoidance of needless decisions of state law." *Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 809 (2d Cir. 1979) (citation omitted). Since the Court has dismissed all of Plaintiff's federal claims, it declines to exercise supplemental jurisdiction over their state-law claims and dismisses them without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

**IV. CONCLUSION**

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion to dismiss is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall service a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: April 16, 2015
       Albany, New York

_____
Mae A. D'Agostino
U.S. District Judge